**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTT DOLEMBA, | ) | |
| on behalf of plaintiff and the class defined | ) | |
| below, | ) | 16 C 10348 |
| | ) | |
| Plaintiff, | ) | Judge Matthew F. Kennelly |
| | ) | Magistrate Judge Susan E. Cox |
| vs. | ) | |
| | ) | |
| LIFESTATION, INC., | ) | |
| and DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Plaintiff Scott Dolemba has requested that this Court enter an order determining that this action may proceed as a class action against defendant Lifestation, Inc. This memorandum is submitted in support of plaintiff's motion.

**I.      NATURE OF THE CASE**

On October 4, 2016, at about 10.09 a.m.,  plaintiff received a telephone call on his cell phone purportedly from 630-801-5265. (Exhibit A). The call began with a recorded message offering a medical alert system valued at $475.00.  The message concluded by inviting plaintiff to press 1 to speak with a live person.  Plaintiff pressed 1 and was connected to a live person, who identified himself as "Andy," and offered defendant's medical alert system.  The offer was to provide a "free" medical alert device worth $475.00 if plaintiff took monthly monitoring at $29.95 per month.

Defendants placed the phone call to plaintiff's cell phone.  Plaintiff did not authorize the automated placement of calls to his cell phone. Plaintiff did not furnish his cell phone number to defendant.

On information and belief, the calls were placed using a predictive dialer and prerecorded voice. Predictive dialers place calls without human intervention until a connection is made. The

1

machine "predicts" when a human is likely to be available to take the call if answered.

Plaintiff alleges that these calls were made in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA") and the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA").

The TCPA, 47 U.S.C. § 227(b) makes unlawful:

> **(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–**
>
>> **(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–**
>>
>>> **(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; . . .**

Plaintiff also contends (Count II) that the unsolicited robocalls to his cell phone are an unfair practice that violates §2 of the ICFA, 815 ILCS 505/2. The prohibitions of "unfair" and "deceptive" practices are distinct. *Elder v. Coronet Ins. Co.*, 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990). In determining whether a practice is "unfair," both federal and state law consider:

> **(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise -- whether, in other words, it is within at least the penumbra of some common-law, statutory or other established concept of unfairness;**
>
> **(2) whether it is immoral, unethical, oppressive or unscrupulous;**
>
> **(3) whether it causes substantial injury to consumers (or competitors or other businessmen).**

*FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244-45 n. 5 (1972); *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 775 N.E.2d 951 (2002); *Scott v. Association for Childbirth at Home, Int'l*, 88 Ill.2d 279, 430 N.E.2d 1012 (1981); *Elder v. Coronet Ins. Co., supra.* Unsolicited

2

telemarketing calls violate public policy as established by statutes, transfers part of defendant's

advertising cost to the hapless recipient, and costs the recipient money.

## II.    STANDARD FOR CLASS CERTIFICATION

Class actions are essential to enforce laws protecting consumers.  As the court stated in

*Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill.App.3d 995, 574 N.E.2d 760 (1st Dist. 1991):

> **In a large and impersonal society, class actions are often the last barricade of**
> **consumer protection. . . . To consumerists, the consumer class action is an inviting**
> **procedural device to cope with frauds causing small damages to large groups.  The**
> **slight loss to the individual, when aggregated in the coffers of the wrongdoer, results**
> **in gains which are both handsome and tempting.  The alternatives to the class action**
> **--  private suits or governmental actions  --  have been so often found wanting in**
> **controlling consumer frauds that not even the ardent critics of class actions**
> **seriously contend that they are truly effective.  The consumer class action, when**
> **brought by those who have no other avenue of legal redress, provides restitution to**
> **the injured, and deterrence of the wrongdoer.**  (574 N.E.2d at 764, 766).

Several courts have certified class actions under the TCPA.  Telephone call and

text message cases include:  *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036  (9th

Cir. 2012); *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674 (S.D.Fla.

2013); *Mitchem v Illinois Collection Serv.*, 271 F.R.D. 617 (N.D.Ill. 2011); *Balbarin v. North*

*Star Capital Acquisition, LLC,* 10 C 1846, 2011 U.S. Dist. LEXIS 686 (N.D. Ill., Jan. 5, 2011),

later opinion, 2011 WL 211013, 2011 U.S. Dist. LEXIS 5763 (N.D.Ill., Jan. 21, 2011), later

opinion, 2011 U.S. Dist. LEXIS 58761 (N.D. Ill., June 1, 2011); *Lo v. Oxnard European Motors,*

*LLC*, 11CV1009 JLS (MDD), 2012 WL 1932283, 2012 U.S. Dist. LEXIS 73983 (S.D.Cal., May

29, 2012).  Other cases include:  *Holtzman v. Turza*, 08 C 2014, 2009 WL 3334909, 2009 U.S.

Dist. LEXIS 95620 (N.D.Ill., Oct. 14, 2009), aff'd in pertinent part, 728 F.3d 682 (7th Cir.

2013); *Sadowski v. Med1 Online, LLC,* 07 C 2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS

41766 (N.D.Ill., May 27, 2008); *CE Design Ltd. v Cy's Crabhouse North, Inc.*, 259 F.R.D. 135

(N.D.Ill. 2009); *Targin Sign Sys. v Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894

(N.D.Ill. 2010); *Garrett v. Ragle Dental Lab, Inc.,* 10 C 1315, 2010 U.S. Dist. LEXIS 108339,

2010 WL 4074379 (N.D.Ill., Oct. 12, 2010);  *Hinman v. M & M Rental Ctr.,* 545 F.Supp. 2d 802

(N.D.Ill. 2008); *Clearbrook v. Rooflifters, LLC*, 08 C 3276, 2010 U.S. Dist. LEXIS 72902 (N.D. Ill. July 20, 2010) (Cox, M.J.); *G.M. Sign, Inc. v. Group C Communs., Inc*., 08 C 4521, 2010 WL 744262, 2010 U.S. Dist. LEXIS 17843 (N.D. Ill. Feb. 25, 2010);  *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642 (W.D.Wash. 2007); *Display South, Inc. v. Express Computer Supply, Inc.,* 961 So.2d 451, 455 (La. App. 1st Cir. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.*, 992 So. 2d 510 (La. App. 1st Cir. 2008); *Lampkin v. GGH, Inc.*, 146 P.3d 847 (Ok. App. 2006); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. (App.) 94, 50 P.3d 844 (2002);  *Core Funding Group, LLC v. Young*, 792 N.E.2d 547 (Ind.App. 2003); *Critchfield Physical Therapy v. Taranto Group, Inc.*, 293 Kan. 285; 263 P.3d 767 (2011); *Karen S. Little, L.L.C. v. Drury Inns. Inc.,* 306 S.W.3d 577 (Mo. App. 2010); *Lindsay Transmission, LLC v. Office Depot, Inc.*, 4:12cv221 (E.D.Mo., Feb. 25, 2013).

## III.   THE PROPOSED CLASSES MEET <br>THE REQUIREMENTS FOR CERTIFICATION

### A.   Rule 23(a)(1)  --  Numerosity

Fed.R.Civ.P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  "When the class is large, numbers alone are dispositive . . . ." *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986).  Where the class numbers at least 40, joinder is generally considered impracticable.  *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); *Riordan*, 113 F.R.D. at 62 (10-29 sufficient); *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452, 463 (E.D.Pa. 1968) (25 sufficient); *Sala v. National R. Pass. Corp.*, 120 F.R.D. 494, 497 (E.D.Pa. 1988) (40-50 sufficient); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (about 70).  It is not necessary that the precise number of class members be known.  "A class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321 (E.D.N.Y. 1982); *Lewis v. Gross*, 663 F. Supp. 1164, 1169 (E.D.N.Y. 1986).

It is reasonable to infer numerosity from the fact that defendant made calls using an automatic dialer to generate business. It is expensive to purchase or arrange for the use of automated dialing equipment, and it makes no economic sense to incur this cost for less than 40 calls. Thus, the fact that defendant advertised by means of using an automatic dialer makes it reasonable to infer that calls were made to more than the 20-40 people necessary to satisfy the numerosity requirement. Plaintiff will obtain the exact number of class members through discovery and requests a briefing schedule long enough to obtain such information.

**B.     Rules 23(a)(2) and 23(b)(3) – Predominance of common questions of law or fact**

Fed.R.Civ.P. 23(a)(2) requires that there be a common question of law *or* fact. Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members.

These requirements are normally satisfied when there is an essential common factual link between all class members and the defendant for which the law provides a remedy. *Halverson v. Convenient Food Mart, Inc.*, 69 F.R.D. 331, 334 (N.D.Ill. 1974). Where a question of law involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D.Ill. 1984); *accord, Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D.Ill. 1988); *Carroll v. United Compucred Collections*, 1-99-0152 H/G, 2002 U.S. Dist. LEXIS 25032, *43-44 (M.D.Tenn. Nov. 15, 2002), adopted in pertinent part, 2003 U.S. Dist. LEXIS 5996 (M.D. Tenn., Mar. 31, 2003), aff'd, 399 F.3d 620 (6th Cir. 2005); *Wahl v. Midland Credit Mgmt.*, 06 C 1708, 2007 U.S. Dist. LEXIS 39626, *14-15 (N.D.Ill., May 30, 2007); *Smith v. Nike Retail Services, Inc.*, 234 F.R.D. 648, 659 (N.D.Ill. 2006). The authorities hold that cases dealing with the legality of standardized documents or conduct are generally appropriate for resolution by means of a class action because the document or conduct is the focal point of the analysis. *Halverson, supra*, 69 F.R.D. at 334-336; *Haroco v. American Nat'l Bank*, 121 F.R.D. 664, 669 (N.D. Ill. 1988) (improper

computation of interest); *Kleiner v. First Nat'l Bank*, 97 F.R.D. 683, 692 (N.D.Ga. 1983) (same); *Heastie v. Community Bank*, 125 F.R.D. 669, 675 (N.D.Ill. 1989) (execution of home improvement financing documents in sequence that evaded consumers' rescission rights); *Carroll v. United Compucred Collections*, 1-99-0152 H/G, 2002 U.S. Dist. LEXIS 25032, *47-48 (M.D.Tenn. Nov. 15, 2002) (collection practices).

In this case, the "common nucleus of operative fact," *Halverson*, 69 F.R.D. at 335, is that defendant placed robocalls using predictive dialers and a prerecorded voice to the cell phones of plaintiff and the class members. This gives rise to the common legal question of whether defendant thereby violated the TCPA and ICFA.

The only individual issue is the identification of the class members, a matter capable of ministerial determination from defendant's records. Questions readily answerable from a defendant's files do not present an obstacle to class certification. *Heastie v. Community Bank*, 125 F.R.D. 669 (N.D.Ill. 1989) (court found that common issues predominated where individual questions of injury and damages could be determined by "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank").

In any event, the Seventh Circuit has held that the need for "separate proceedings of some character . . . to determine the entitlements of the individual class members to relief" should "not defeat class treatment of the question whether defendants violated [the law]." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). "Once that question is answered, if it is answered in favor of the class, a global settlement . . . will be a natural and appropriate sequel. And if there is no settlement, that won't be the end of the world. Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after

6

the liability trial and providing notice to class member concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." *Id.*

### C.  Rule 23(a)(3) -- Typicality

The rule requires that the claims of the named plaintiff be typical of the claims of the class:

> **A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.**

*De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

In the instant case, typicality is inherent in the class definitions. Each of the class members has been subjected to the same practice as plaintiff. Plaintiff's claims and the claims of the class members all turn on same facts and legal theories.

### D.  Rule 23(a)(4) -- Adequacy of representation

The rule also requires that the named plaintiff provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *accord*, *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975); *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321.

Plaintiff understands the obligations of a class representative, and has retained experienced counsel, as is indicated by Exhibit B, which sets forth counsel's qualifications.

The second relevant consideration under Rule 23(a)(4) is whether the interests of the named plaintiff are coincident with the general interests of the class. Here, Plaintiff and members of the classes seek monetary damages as the result of defendant's unlawful communication practices, provided for by 47 U.S.C. §227 and the ICFA. Given the identity of claims between plaintiff and the class members, there is no potential for conflicting interests in

this action. There is no antagonism between the interests of the named plaintiff and those of the classes.

### E.    Rule 23(b)(3)  --  Class action is superior to other available methods of resolving this controversy

Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Eovaldi v. First Nat'l Bank*, 57 F.R.D. 545 (N.D. Ill. 1972).  The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy.  *Scholes*, 143 F.R.D. at 189; *Hurwitz v. R.B. Jones Corp.*, 76 F.R.D. 149 (W.D.Mo. 1977).  It is proper for a court, in deciding the "best" available method, to consider the ". . . inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually."  *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

In this case there is no better method available for the adjudication of the claims which might be brought by each individual consumer. Individual cases are not economically feasible. The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> **A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit.  This is particularly important where, as here, a large number of small and medium sized claimants may be involved.  In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .**

*In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted). Another court noted:

> **Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action.  As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis.  These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly**

8

> **situated.' 7B Wright et al., §1778, at 59; see e.g., <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiff to pool claims which would be uneconomical to litigate individually.')  The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.**

*Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628-629 (E.D.Pa 1994).

Class certification will provide an efficient and appropriate resolution of the controversy.

*Zanni v. Lippold*, 119 F.R.D. 32. (C.D. Ill. 1998).

## IV.    <u>CONCLUSION</u>

The proposed classes meet the requirements of Rules 23(a) and (b)(3).  Plaintiff respectfully requests that this Court certify this action as a class action.

Respectfully submitted,

<u>s/ Daniel A. Edelman</u>
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Julie Clark
Heather Kolbus
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\33291\Pleading\Plaintiff's Memorandum in Support of plantiffs motion for class cert_Pleading.wpd

9

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, certify that on November 4, 2016, or as soon thereafter as service may be effectuated, I caused a true and accurate copy of the foregoing document to be served, via Process Server, on the following party:

Illinois Corporation Service Co.
801 Adlai Stevenson Drive
Springfield, IL 62703

s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)